

**SO ORDERED.**

**SIGNED this 06 day of October, 2010.**

*Dale L. Somers*
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

___

Opinion designated for print publication
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In Re:<br>BROOKE CORPORATION, et. al.,<br><br>DEBTORS. | CASE NO. 08-22786<br>(Jointly Administered)<br>CHAPTER 7 |
| ALBERT A. RIEDERER, Chapter 7<br>Trustee of Brooke Corporation,<br><br>PLAINTIFF,<br><br>v.<br><br>LOGAN WILDLIFE CORPORATION,<br>THE LELAND ORR SELF DIRECTED<br>IRA ACCOUNT, AND<br>THE ROBERT ORR SELF DIRECTED<br>IRA ACCOUNT,<br><br>DEFENDANTS. | ADV. NO. 09-6070 |

**MEMORANDUM OPINION AND ORDER**
**ORDERING THAT SPIRITBANK BE ADDED AS A DEFENDANT**

This is an action by the Chapter 7 Trustee to avoid fraudulent transfers under 11

U.S.C. §§ 544 and 548[1] and K.S.A. 33-204 and -205, and to recover the transferred property or the value of the property for the benefit of the estate under § 550. The matter under advisement is the Motion to Dismiss filed by all Defendants, arguing the Complaint should be dismissed because the initial transferee, SpiritBank, is not a defendant. Following arguments heard on February 19, 2010,[2] the Court took the Motion to Dismiss under advisement. The Court has jurisdiction.[3]

**BACKGROUND FACTS.**

Plaintiff Albert Riederer was appointed special master of Debtor Brooke Corporation in prepetition federal court proceedings. Shortly after Brooke Corporation filed a voluntary petition under Chapter 11 on October 28, 2008, Mr. Riederer was appointed Chapter 11 Trustee. When the case was converted to Chapter 7 on June 29, 2009, Mr. Riederer was appointed Chapter 7 Trustee. On October 29, 2008, the Court granted a motion to jointly administer the bankruptcies of Brooke Corporation, Brooke Capital Corporation, and Brooke Investment, Inc., with the Brooke Corporation bankruptcy case being the lead case.

---

[1] Future references to Title 11 in the text shall be to the code section only.

[2] Plaintiff appeared by Michael D. Fielding of Husch Blackwell Sanders LLP. Defendants appeared by David P. Eron of Eron Law Office. There were no other appearances.

[3] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (H). There is no objection to venue or jurisdiction over the parties.

A summary of the facts alleged in the Complaint are as follows. In March 2008 Aleritas (formerly known as Brooke Credit Corporation, the majority of the stock of which was owned by Debtor Brooke Corporation) entered into a loan agreement with First State Bank of Gothenburg, Nebraska in the approximate amount of up to $52,255,000. In connection with that loan, First State Bank sold a participation interest of $10,000,000 to SpiritBank, an Oklahoma bank, located in Tulsa, Oklahoma. SpiritBank was concerned about its investment, and as an inducement to enter into the transaction, insisted that Brooke Corporation, a Debtor herein, enter into an Option Agreement with SpiritBank. The Option Agreement had a "take out option" whereby SpiritBank had the option to demand that Brooke Corporation take out its position in the participated loan. The Option Agreement was amended several times, and Brooke posted various types of collateral, including certificates of deposit and some of Brooke's stock in Aleritas. On July 1, 2008, an amendment required Brooke to convey as security additional Aleritas stock and real estate interests. On July 8, 2008, and in accordance with the July amendment of the Option Agreement, SpiritBank recorded mortgages on two tracts of land in Smith County, Kansas. In August 2008, SpiritBank offset a CD valued at over $2 million and this action was ratified by Brooke in a subsequent amendment to the Option Agreement. Brooke filed for bankruptcy protection on October 28, 2008.

The Trustee alleges that Brooke received no consideration for the Option Agreement, or any amendments thereto, including the July amendments which resulted in the granting of the mortgages which are the subject of the Trustee's avoidance Complaint.

3

The Trustee further alleges that Brooke was continually insolvent for at least the two-year period before filing, and that Aleritas was also insolvent and owed financial obligations to non-Brooke affiliated entities.

In approximately January 2009, SpiritBank sold its interest in the mortgage on one of the tracts of Smith County real estate to Defendant Logan Wildlife Corporation, a Kansas corporation. SpiritBank also sold its interest in the mortgage on the other tract to Defendants Leland Orr Self Directed IRA and the Robert Orr Self Directed IRA. Both Robert Orr and Leland Orr were officers and directors of Debtor Brooke Corporation.[4] Defendants in their Motion to Dismiss allege that they paid fair consideration for the mortgages.

During the bankruptcy, the Court authorized the sale of the Smith County properties that were subject to the mortgages purchased by Defendants. The proceeds are being held in a trust account pending a determination of who holds the superior claim to them.[5] The Complaint seeks to set aside the transfers of the mortgages of Brooke's

---

[4] As to Debtor Brooke Corporation, Robert Orr was president from 1986 though 1991, CEO from 1986 through October 1, 2007, and chairman of the board from 1991 through September 17, 2008. Leland Orr was president of Brooke Corporation from 2003 through January 2005 and again for several months in 2008, CEO from March 11, 2008 through mid-October 2008, CFO from 1995 through March 11, 2008, treasurer from 1986 through April 26, 2007, secretary from 1986 through 2001, and assistant secretary from 2001 through March 11, 2008. Both men were members of the Brooke Corporation board of directors through October, 2008. As to Debtor Brooke Capital Corporation, whose case is consolidated with that of Debtor Brooke Corporation, at various times in 2007 and 2008, Robert Orr served as CEO, president, and chairman of the board, and Leland Orr was CFO. As to Debtor Brooke Investments, Inc., whose case is also consolidated with that of Brooke Corporation, Robert Orr served as president during 2002 and was a member of the board of directors and Leland Orr at various times served as treasurer, president, and a member of the board of directors.

[5] Case no. 08-22786, doc. 694.

interests in the Smith County properties, and to recover their value for the benefit of the estate.

**ANALYSIS.**

**A.     The Complaint.**

The Trustee seeks to avoid the transfers of the mortgages and recover them or their value for the benefit of the estate. As to avoidance, he cites §§ 544(b) and 548. Section 544(b)(1) provides:

> (b)(1) Except as provided in paragraph (2) [addressing charitable contributions], the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

As to applicable law, the Trustee relies upon sections of the Kansas version of the Uniform Fraudulent Transfer Act, including K.S.A. 33-204(a)(2) and -205(a), defining fraudulent transfers. Generally, § 548, the fraudulent transfer section of the Bankruptcy Code, allows the Trustee to avoid transfers made by the debtor within two years before the date of filing the petition if the debtor received less than a reasonably equivalent value and was insolvent on the date of the transfer.

Section 550(a) allows the Trustee to recover property which was the subject of a fraudulent transfer or its value from the initial transferee or any immediate transferee of such initial transferee. It provides:

> (a) Except as otherwise provided in this section, to the

5

>    extent that a transfer is avoided under section 544, 545, 547,
>    548, 549, 553(b), or 724(a) of this title, the trustee may
>    recover, for the benefit of the estate, the property transferred,
>    or, if the court so orders, the value of such property, from —
>    >    (1) the initial transferee of such transfer or the entity
>    >    for whose benefit such transfer was made; or
>    >    (2) any immediate or mediate transferee of such initial
>    >    transferee.

K.S.A. 33-207 of the Kansas Fraudulent Transfer Act addresses remedies in part as follows:

>    (a) In an action for relief against a transfer or obligation under
>    this act, a creditor, subject to the limitations in K.S.A. 33-208,
>    may obtain:
>    >    (1) Avoidance of the transfer or obligation to the extent
>    >    necessary to satisfy the creditor's claim.

**B.     The Motion to Dismiss.**

Defendants seek dismissal under Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(7). That rule provides that a party may present the defense of failure to join a party under Rule 19 by motion. Rule 19(a) defines when a party is required to be joined if feasible. When joinder of a necessary party is not feasible, Rule 19(b) addresses the factors to be considered by a court when deciding whether the case "should proceed among the existing parties or should be dismissed."[6]

---

[6] Rule 19(b) provides:

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

6

In this case, SpiritBank, the initial transferee, is not a defendant, and there has not been a prior adjudication that the transfers in issue are subject to avoidance under §§ 544 or 548 or state law. Defendants' Motion to Dismiss under Rule 19(b) is predicated upon a Tenth Circuit decision, *In re Slack-Horner,* which held that under § 550, in the absence of a determination, made in litigation in which the initial transferee was a party, that the transfer from the debtor to the initial transferee was fraudulent, the trustee could not recover the property or its value from a subsequent transferee.[7]

### C. Standards for Dismissal.

When ruling on a motion to dismiss under Rule 19(b) for failure to join an indispensable party, the Court must engage in a two-part analysis.[8] First, the Court must determine under Rule 19(a) if the party is necessary and therefore must be joined if joinder is feasible. Second, "[i]f the absent party is necessary but cannot be joined, the court must then determine under Rule 19(b) whether the party is indispensable. If so, the

---

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
    (A) protective provisions in the judgment;
    (B) shaping the relief; or
    (C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

[7] *Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.2d 577 (10th Cir. 1992).

[8] *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996).

7

suit must be dismissed."[9]  A party moving for dismissal under Rule 12(b)(7) has the burden "to show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence."[10]

Rule 19(a) defines when a party is necessary.  It provides:

> **(a) Persons Required to Be Joined if Feasible.**
> **(1) *Required Party*.**  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**D.     SpiritBank Is a Necessary Party.**

**1.     Under Tenth Circuit precedent, SpiritBank is a necessary party.**

Defendants, when asserting that SpiritBank is a necessary party, cite Rule 19(a)(1)(A), providing that a party is necessary if "in that person's absence, the court cannot accord complete relief among the existing parties."  Defendants submit that in

---

[9] *Id*.

[10] 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d*, § 1359 at 67 (2004).

8

accord with *Slack-Horner*, in this circuit, the Trustee may not proceed under § 550 to recover an allegedly fraudulent conveyance or its value from a subsequent transferee without first having actually avoided the transfer in an action against the initial transferee, in this case, SpiritBank, or at least having obtained such a ruling against SpiritBank in the action against the subsequent transferee. In essence, Defendants assert that the Trustee has failed to plead a claim upon which relief may be granted because the transfer from Brooke to SpiritBank has not been set aside and SpiritBank is not a party.

In *Slack-Horner*, the debtor's interest in real property was transferred to the state prepetition in a tax lien sale at which Simons purchased the property. After the expiration of the redemption period and within one year prior to debtor's filing for bankruptcy relief, a deed was issued to Simons. The trustee alleged that the transfer to Simons was fraudulent under § 548 and sought to recover the value of the property from Simons. The bankruptcy court and the district court denied relief, finding that no interest of the debtor in property was transferred to Simons when the deed was recorded. The Tenth Circuit affirmed, but on different grounds, finding that the crucial event was the transfer by the debtor to the state in the foreclosure action, and that Simons was a subsequent transferee from the state. The trustee had not made any attempt to have the transfer from the debtor to the state avoided under § 548, either in the action against Simons or in a separate proceeding. The Tenth Circuit held that in the absence of such a determination of avoidance, the trustee could not recover the property or its value from Simons, the immediate transferee of the state, under § 550. The court relied upon the phrase in

9

§ 550(a) "to the extent that a transfer is avoided under section . . . 548 . . . the trustee may recover . . . the value of such property" from the initial transferee or any immediate transferee of such initial transferee. The court stated in a footnote, "[T]he trustee may not set aside such a transfer of property by the state as fraudulent without bringing the state into the action."[11]

The Court finds that *Slack-Horner* is binding precedent, requiring this Court to hold that SpiritBank is a necessary party. Like *Slack-Horner*, this is an action to avoid a transfer against subsequent transferees where there has been no prior adjudication that the transfer from the Debtor to SpiritBank is avoidable, and SpiritBank is not a party. Under the Tenth Circuit opinion, the Trustee cannot prevail based upon the present Complaint, even though the Complaint clearly alleges that the transfer from the Debtor is avoidable. *Slack-Horner* has been consistently construed to require that the avoidability of the initial transfer be determined in litigation brought against the initial transferee. Circuit Judge Seymour, when dissenting from the majority decision in *Slack-Horner*, interpreted the majority as holding "that because Simons received the property from the state rather than directly from the debtor, the trustee must seek recovery only from the state and cannot proceed against Simons even if the transfer is avoidable under 11 U.S.C. § 548 (1988)."[12] A leading bankruptcy treatise, *Collier on Bankruptcy*, finds *Slack-Horner* interprets § 550 "to require a successful avoidance action against the initial transferee before recovery

---

[11] *Slack-Horner Foundries Co.*, 971 F.2d at 580, n. 1.

[12] *Id*. at 581 (Seymour, J., dissenting).

may be had from a subsequent transferee."[13]  Other courts also classify the Tenth Circuit as among those courts which read § 550 to require that the plaintiff must first (or simultaneously) bring a successful suit against the initial transferee before he can recover the transfer or its value from a subsequent transferee.[14]

### 2. *Slack-Horner* is the minority position.

Courts are divided on the question whether the trustee must first avoid the transfer between the initial transferor and transferee before he can recover from a subsequent transferee. *Collier* states:

> Recovery "to the extent that" a transfer is avoided has been interpreted to require a successful avoidance action against the initial transferee before recovery may be had from a subsequent transferee. The better view, adopted by the majority of courts, is that a transfer may be found avoidable and a recovery may be had from a subsequent transferee without suing the initial transferee.[15]

*Collier*'s "better view," which is contrary to *Slack- Horner*, is illustrated by the Eleventh Circuit's opinion in *International Administrative Services*.[16]  It rejected defendants' argument that the Code "requires that the Trustee first avoid the transfers to

---

[13] 5 *Collier on Bankruptcy*, ¶ 550.02[1] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2010).

[14] *E.g., Official Comm. of Unsecured Creditors v. J.P. Morgan Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*, 394 B.R. 721, 741 (S.D.N.Y. 2008); *In re Trans-End Technology, Inc.*, 220 B.R. 101, 105 (Bankr. N.D. Ohio 1998).

[15] 5 *Collier on Bankruptcy* ¶ 550.02.

[16] *IBT Intern., Inc. v. Northern (In re Int'l Admin. Servs., Inc,)*, 408 F.3d 689 (11th Cir. 2005).

11

the initial transferees before he has a cause of action against subsequent transferees."[17]

This strict interpretation of § 550(a) was found to produce "a harsh and inflexible result that runs counterintuitive to the nature of avoidance actions."[18] The more "tenable result" was to allow a plaintiff, once an avoidable transfer is proven to exist, to "skip over the initial transferee and recover from those next in line."[19] The Eleventh Circuit found the reasoning of *Richmond Produce*[20] to be correct, and held that mandating actual avoidance of the initial transfer conflated the Code's "avoidance and recovery sections" and was not consistent with the legislative history of the "to the extent" language of § 550.[21] "Therefore we hold that Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee."[22] *International Administrative Services* has been widely followed.

The circuit court adopting the contrary view is the Tenth Circuit in *Slack-Horner*, described in detail above. However, that decision has not been widely followed. Only three bankruptcy courts have adopted its construction of § 550,[23] and one of those has

---

[17] *Id*. at 703.

[18] *Id*. at 704.

[19] *Id.* at 706.

[20] *In re Richmond Produce Co.*, 195 B.R. 455 (N.D. Cal. 1996).

[21] *International Admin. Servs.*, 408 F.3d at 706 (quoting *Richmond Produce*, 195 B.R. at 463).

[22] *Id.* at 708.

[23] *Contemporary Indus. v. Frost*, 2001 WL 34630639 (Bankr. D. Neb. Feb. 14, 2001); *In re Enron Corp.*, 343 B.R. 75 (Bankr. S.D.N.Y. 2006), *rev'd* 388 B.R. 489 (S.D.N.Y. 2008); *In re Trans-End Technology, Inc.*, 230 B.R. 101 (Bankr. N.D. Ohio Aug 13, 1998).

12

been reversed.[24]

### 3. The Trustee's argument that *Slack-Horner* was wrongly decided is attractive.

The counter-argument to *Slack-Horner* is attractive.[25] Sections 544 and 548, the relevant avoidance provisions of the Code, do not expressly require that the transfer from Brooke to SpiritBank first be avoided in an action against SpiritBank before the mortgages or their value may be recovered from the Defendants. Section 548 is silent as to effect of avoidance and necessary parties to an action to avoid a fraudulent conveyance. Section 550 expressly allows recovery of the fraudulently transferred property or its value from the initial transferee and any immediate or mediate transferee of the initial transferee. The only phrase of § 550 supporting the requirement of an action against the initial transferee as a condition to recovery from a subsequent transferee is the phrase in subsection (a) "to the extent that a transfer is avoided under section 544 . . . [or] 548."

The legislative history of § 550 reflects a purpose of the "to the extent" language contrary to the interpretation in *Slack-Horner*. The 1978 Senate Report on the proposed Bankruptcy Reform Act of 1978, which became the original version of the current Bankruptcy Code, states the following as to the purpose of the "to the extent that"

---

[24] *In re Enron Corp.*, 388 B.R. 489 (S.D.N.Y. 2008).

[25] In a 2005 unpublished decision in a preference action, this Court previously declined to follow *Slack-Horner* and found the reasoning of *Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.)*, 220 B.R. 331 (Bankr. W.D. Tex.1998) more persuasive. *Morris v. Emprise Bank (In re Jones Storage and Moving, Inc)*, Case no. 00-14862; Adv. no. 04-5106 (Bankr. D. Kan. April 14, 2005).

13

language:

> Section 550 prescribes the liability of a transferee of an avoided transfer, and enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee. Subsection (a) permits the trustee to recover from the initial transferee of an avoided transfer or from any immediate or mediate transferee of the initial transferee. The words "to the extent that" in the lead in to this subsection are designed to incorporate the protection of transferees found in proposed 11 U.S.C. 549(b) and 548(c).[26]

The following portion of the House debate on the compromise bill drafted after return of the House bill from the Senate confirms that the purpose of the "to the extent" language is to assure the protections of § 548(c).

> Section 550(a)(1) of the House amendment has been modified in order to permit recovery from an entity for whose benefit an avoided transfer is made in addition to a recovery from the initial transferee of the transfer. Section 550(c) would still apply, and the trustee is entitled only to a single satisfaction. The liability of a transferee under section 550(a) applies only "to the extent that a transfer is avoided." This means that liability is not imposed on a transferee to the extent that a transferee is protected under a provision such as section 548(c) which grants a good faith transferee for value of a transfer that is avoided only as a fraudulent transfer, a lien on the property transferred to the extent of value given.[27]

*Collier* explains the protections in §§ 549(b) and 548(c) as follows:

> Under section 549(b), in an involuntary case, a

---

[26] S. Rep. No. 95-989, at 90 (1978), reprinted in D *Collier on Bankruptcy*, Legislative History of the Bankruptcy Reform Act of 1978, App. Pt. (4)(e)(i) at 4-2039 (15th ed. rev. 2009).

[27] 124 Cong. Rec. H11089, at H11097 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), reprinted in D *Collier on Bankruptcy*, Legislative History of the Bankruptcy Reform Act of 1978, App. Pt. (4)(f)(i) at 4-2449.

14

> transferee with knowledge or notice of a bankruptcy case is generally protected as to value given after the filing of the petition but before the order for relief. If the value of the property transferred by the debtor exceeds the value given by the transferee, the transfer will be avoidable only to the extent of that excess. Therefore, when the trustee seeks to recover the property transferred or its value under section 550(a), the recovery may be made only to the extent the transfer was avoided.
>
> Under section 548(c), a good faith transferee of a fraudulent transfer is generally given a lien to secure value given by that transferee to the debtor in exchange for the transfer. If the value of the property transferred by the debtor exceeds the value given by the transferee, the transfer will be avoidable only to the extent of that excess. Therefore, when the trustee seeks to recover the property transferred or its value under section 550(a), the recovery may be made only to the extent the transfer was avoided.[28]

The Tenth Circuit's rule makes recovery of fraudulently transferred property for the benefit of the estate more difficult in some situations. Requiring the joinder of the initial transferee in an avoidance action even though that transferee no longer has an interest in the property can complicate avoidance litigation while providing no benefit. So long as the plaintiff in the avoidance litigation sustains the burden to show that the initial transfer is avoidable, this is all that § 550 requires to recover from a subsequent transferee. If, as was suggested by Judge Seymour when dissenting from the majority holding in *Slack-Horner*,[29] in the Tenth Circuit a fraudulent transfer may be recovered only from a party which received an interest in property from the debtor, the potential for

---

[28] 5 *Collier on Bankruptcy*, ¶ 550.02[1] (footnotes omitted).

[29] *Slack-Horner Foundries Co.*, 971 F.2d at 582 (Seymour, J. dissenting).

15

recovery of fraudulent transfers could be severely limited.  Since transferees receiving the property from the initial transferee would have received no property from the debtor, they would have no liability to the estate.  A savvy initial transferee could avoid liability by simply transferring the property received from the debtor to another party.  The *Slack-Horner* construction in effect writes the expanded scope of transferee liability codified in § 550 out of the Code.  It can be argued that the majority in *Slack-Horner* confused assessing the avoidability of a transfer under § 548 with determining which transferees are liable under § 550.  The legislative history quoted above expressly states that these are separate concepts.  The majority assumed that a trustee may recover property only from a transferee that received the property directly from the debtor, but § 548 contains no such requirement.  Further, § 550 expressly permits the recovery of the transfer from subsequent transferees to the extent the transfer is avoided.

This Court is bound by the precedent of the Tenth Circuit's opinion in *Slack-Horner*.  Under that decision, complete relief cannot be granted to the Trustee unless SpiritBank is a party.  Accordingly, the Court finds that SpiritBank is a necessary party.

### E. Since SpiritBank is a necessary party, it must be joined as a party if feasible.

Rule 19(a)(2) provides: "If a person has not been joined as required, the court must order that the person be made a party."  The Court therefore orders that SpiritBank be joined as a defendant.  The Court knows of no reason why such joinder is not feasible.  In his brief, the Trustee states,

> The Trustee has made a separate demand against SpiritBank
> with regard to the facts set forth herein. The Trustee
> anticipates filing a separate adversary action against
> SpiritBank in [the] near term. The Trustee may seek to
> consolidate that adversary action with the instant Complaint
> for purposes of trial.[30]

However, if joinder is not feasible, the Trustee shall so inform the Court within 14 days of this opinion and further proceedings to make the findings contemplated by Rule 19(b) shall be held.

**CONCLUSION.**

For the foregoing reasons, the Defendants' Motion to Dismiss is denied. SpiritBank is a necessary party, and the Trustee is ordered to join SpiritBank as a party, if such joinder is feasible. If joinder is not feasible, the Trustee shall so inform the Court, and further proceedings shall be held to make the determinations required by Rule 19(b).

**IT IS SO ORDERED.**

# # #

---

[30] Doc. 24, p. 3, n. 2.

17

Case 09-06070    Doc# 29    Filed 10/06/10    Page 17 of 17